IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

TRAVIS YEARGANS,                    )
                                    )
            Plaintiff,              )
                                    )
vs.                                 )        Case No. 18-00409-CV-W-ODS
                                    )
THE CITY OF KANSAS CITY,            )
MISSOURI,                           )
                                    )
            Defendant.              )

ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S DECLARATION, (2) GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (3) FINDING AS MOOT
THE PARTIES' MOTIONS TO EXCLUDE EXPERT WITNESSES

Pending are Defendant's Motion for Summary Judgment (Doc. #35), Defendant's
Motion to Exclude Plaintiff's Experts (Doc. #37), Plaintiff's Motion to Exclude
Defendant's Experts (Doc. #38), and Defendant's Motion to Strike Plaintiff's Declaration
(Doc. #53).[1]  For the following reasons, Defendant's Motion to Strike Plaintiff's
Declaration is granted in part and denied in part, Defendant's Motion for Summary
Judgment is granted, and the  Motions to Exclude Expert Witnesses are deemed moot.


I.      BACKGROUND[2]

The Kansas City Fire Department ("KCFD") is a department within Defendant
The City of Kansas City, Missouri.  Relevant to this matter, a KCFD employee wishing
to be promoted to captain must take the Captain's Test, which occurs during the fall in
even-numbered years.  In 2012, the Captain's Test consisted of (1) a written
examination; (2) a fire ground component known as the Oral Tactical Exercise; (3) a
company officer situational component known as the Situational Exercise; and (4) points
for seniority.  Each component accounted for twenty-five percent of a candidate's

---

[1] Defendant moves to strike Plaintiff's affidavit, but Plaintiff executed a declaration.
Doc. #49-17.  To avoid confusion, the Court will refer to Plaintiff's filing as a declaration.
[2] Unless otherwise noted, the facts in this section are uncontroverted by the parties.

composite score.[3]  According to the record, 126 KCFD employees took the written examination for the 2012 Captain's Test.[4]  Doc. #36-6, at 10-12.[5]

Ninety-five KCFD employees who took the written examination also participated in the oral examinations (i.e., Oral Tactical Exercise and Situational Exercise) for the 2012 Captain's Test.[6]  Doc. #36-6, at 8-9.  During the oral examinations, the employees responded to the same scenarios, which were presented via video and written materials.  The oral examinations were evaluated by in-house personnel who held the rank of captain or above (hereinafter, "assessors").  The assessors utilized benchmarks as guidelines, but each assessor used his or her own judgment, which Defendant admits was subjective.  Doc. #49-19, at 1320; Doc. #52, at 16, 22.

The oral examinations were graded in October 2012, and the candidates received their scores in November 2012.  Regarding the oral examinations, Caucasian candidates received a mean score of 13.05 on the Situational Exercise and a mean score of 17.98 on the Oral Tactical Exercise, and African-American candidates received a mean score of 13.21 on the Situational Exercise and a mean score of 18.23 on the Oral Tactical Exercise.[7]  Candidates could request a review of their scores if they

---

[3] While the parties generally agree the promotional process was controlled by a collective bargaining agreement, Plaintiff contends the promotional process was not "strictly controlled" by the collective bargaining agreement.  He argues the promotional process was controlled by Defendant and the KCFD because they implemented and operated the process.  Doc. #49, at 8.  In support, Plaintiff cites the October 2017 testimony of Fire Chief Paul Berardi in a state court trial wherein Berardi was asked about sending the evaluation of the 2014 Captain's Test outside of Defendant.  Doc. #49-19, at 344.  Setting aside the cited record does not controvert the fact that the 2012 Captain's Test was controlled by the collective bargaining agreement, what Defendant and the KCFD did regarding the 2014 Captain's Test is irrelevant to Plaintiff's claims.

[4] Of those who took the written examination, ninety-eight identify as Caucasian, twenty-two identify as African-American, four identify as Hispanic, one identifies as Asian, and one employee's race is not identified by the parties.  Doc. #36-6, at 10-12.

[5] The Court's citations to page numbers refer to the pagination applied by the Court's CM/ECF system when a document is filed, which may be different than the page numbering a party used in a filing.

[6] Of those who took the oral examinations, seventy-one identify as Caucasian, nineteen identify as African-American, four identify as Hispanic, and one employee's race is not identified by the parties.  Doc. #36-6, at 8-9.

[7] Plaintiff admits "Defendant's math seems to be close to correct," but he does not offer evidence to the contrary or explain why the computations are incorrect.  Doc. #49, at 14.

believed their scores were inaccurate. The "second review" process occurred in November and December 2012.

After the composite scores were configured, a promotional list was created and published in December 2012. The promotional list ranked the candidates in order of their composite scores, from highest to lowest. Promotions to captain were done in "rank order" – that is, the first captain opening was awarded to the highest ranked person on the list, the second captain opening was awarded to the second highest ranked person on the list, and so on, until all open captain positions were filled.[8] The first promotion was made on January 13, 2013, to the top scoring applicant, an African-American employee whose composite score was 86.5537. Doc. #36-6, at 7-8. From the 2012 Captain's Test promotional list, which was valid for two years, Defendant promoted sixteen employees – twelve identify as Caucasian, three identify as African-American, and one identifies as Hispanic. The last promotion was made on December 14, 2014. After that date, promotions were awarded from the promotional list generated from the 2014 Captain's Test.

Plaintiff Travis Yeargans, who identifies as African-American, became employed with the KCFD as a firefighter in March 1991. In 1996, he was promoted to the position of Fire Apparatus Operator ("FAO"), a driving position. Between 1998 and 2012, Plaintiff unsuccessfully attempted to be promoted to captain on five occasions. Regarding the 2012 Captain's Test, Plaintiff received a composite score of 68.5778. Doc. #36-6, at 8. He was listed thirty-second on the promotional list, meaning thirty-one candidates received higher composite scores than he did. *Id.*

Plaintiff claims he was significantly underscored on the oral examinations and argues that had he "not been underscored because of his race, then he would have been fairly ranked in the top 17 candidates" and promoted to captain.[9] Plaintiff's Oral

---

[8] Plaintiff disputes this fact to the extent Defendant suggests the list is "systematic with no manipulation" by the KCFD. Doc. #49, at 9-10. To dispute this fact, Plaintiff relies on his July 2019 declaration (Doc. #49-17), portions of which are being stricken pursuant to Plaintiff's concession or the Court's decision that certain paragraphs fail to satisfy the federal rule requirements. *See infra*, section II.

[9] The Court presumes Plaintiff refers to seventeen candidates because the sixth ranked candidate passed away. Doc. #36-6, at 7. Accordingly, the top five ranked candidates and the candidates ranked seventh through seventeenth were promoted. *Id.*

Tactical Exercise was evaluated by Battalion Chief Carl Tripp, Battalion Chief Curtis Edwards, and Captain Patty Sterns.  His Situational Exercise was evaluated by Captain C.J. Stenner, Battalion Chief Clay Calvin, and Captain Brian Kanoy.  It is undisputed these individuals did not have the ability to establish municipal policy.  Plaintiff alleges these individuals discriminated against him based on his race.

Effective April 1, 2014, Plaintiff's employment concluded.  Plaintiff alleges he was constructively discharged when the KCFD failed to promote him through the 2012 Captain's Test promotional process.  When he left his employment, Plaintiff felt the opportunity for promotion was gone, and he believed he had no other alternative but to leave.  Defendant contends, and its records reflect, Plaintiff retired.  Doc. #36-4.  It is undisputed that Plaintiff did not discuss his reasons for leaving with Defendant and he did not complain to Defendant that he was the victim of discrimination.  Doc. #36-5, at 1-2.  In May 2018, Plaintiff filed this lawsuit, alleging a failure to promote claim and a constructive discharge claim under 42 U.S.C. § 1983.  Doc. #1.

Now pending are Defendant's motion for summary judgment, Defendant's motion to strike Plaintiff's expert witnesses, Plaintiff's motion to strike Defendant's experts, and Defendant's motion to strike portions of a declaration Plaintiff submitted along with his opposition to Defendant's motion for summary judgment.[10]

## II.    MOTION TO STRIKE PLAINTIFF'S DECLARATION
### A.    Standard

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  A declarant "asserting personal knowledge must include enough factual support to show that the [declarant] possesses that knowledge."  *El Deeb v. Univ. of*

---

[10] The motions to strike experts became fully briefed in July 2019, and the summary judgment motion became fully briefed on August 12, 2019.  Defendant's motion to strike portions of Plaintiff's declaration was filed along with its summary judgment reply.  Doc. #53.  Plaintiff opposed that motion on August 26, 2019.  Doc. #55.  Although Defendant has not filed a reply and the time for doing so has not elapsed, the Court finds a reply is unnecessary.

*Minn.*, 60 F.3d 423, 428-29 (8th Cir. 1995) (citations omitted).  When a declaration does not satisfy the federal rule requirements, it may be subject to a motion a strike because a court is not permitted to consider declarations that fail to meet the federal rule requirements.  *Id.* (citations omitted).  When a party objects on the grounds that a fact is not supported by admissible evidence, "the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated."  *Gannon Int'l Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (citation omitted).

## B.    Discussion

Defendant moves to strike Paragraphs 15, 17, 18, 19, 21, 23, 24, 25, 33, 35, 37, 38, 43, 44, 45, and 47 in Plaintiff's July 25, 2019 declaration due to lack of personal knowledge, lack of foundation, inadmissible hearsay, legal arguments, and/or speculation.  Plaintiff concedes Paragraphs 15, 17, 19, and 24 and the last two lines of Paragraph 18 – i.e., "which was often done in collaboration with management to control who was promoted" – "may not be based on factual presentations without further proof." Doc. #55, at 1.  Pursuant to Plaintiff's concession, the Court strikes Paragraphs 15, 17, 19, and 24, and the last two lines of Paragraph 18.

However, Plaintiff argues Paragraphs 21, 23, 25, 33, 35, 37, 38, 43, 44, 45, and 47 should not be stricken.  He contends these paragraphs explain "why he believed that his working conditions were intolerable, given Defendant's failures to fairly promote him, thus constituting a constructive discharge," and show he "had no way to know whether he would be promoted" when the promotional list was published.  Doc. #55, at 2.

In **Paragraph 21**, Plaintiff states, "[u]pon information and belief, there was a vacant Captain's position when I died number one on the promotional list."  Doc. #49-17, ¶ 21.  Although he may have personal knowledge regarding a pre-2012 promotional list that expired when he was at the top of the list, Plaintiff's declaration represents his knowledge is based on "information and belief."  A declaration made on "information and belief is insufficient" to satisfy the personal knowledge requirement.  *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983) (citations omitted).  Moreover, Plaintiff fails to include any details about the event, including, most

importantly, when it occurred and the basis of his information and belief. Because of the lack of detail, Plaintiff does not demonstrate he possesses personal knowledge, and the paragraph simply sets forth an unsupported conclusion. Thus, the paragraph is insufficient to establish a genuine issue of material fact exists. *See Murr v. Midland Nat'l Life Ins. Co.*, 758 F.3d 1016, 1024 (8th Cir. 2014). Finally, Plaintiff does not demonstrate how this information would be admissible at trial. *Gannon Int'l Ltd.*, 684 F.3d at 793. Accordingly, the Court strikes Paragraph 21.[11]

In **Paragraph 23**, Plaintiff states, "I was told that I would not be promoted because Al Myers was an outspoken Black man and other Captains would for[e]go their retirement until the list expired…." Doc. #49-17, ¶ 23. A party may not rely on hearsay to defeat a motion for summary judgment unless the party also lays a foundation for an exception to the hearsay rule. *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008); *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001); *Churchill Bus. Credit, Inc. v. Pac. Mut. Door Co.,* 49 F.3d 1334, 1337 n.6 (8th Cir. 1995). While the record is viewed in the light most favorable to Plaintiff, who is the non-moving party, the Court cannot "stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay." *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001) (citation omitted).

Plaintiff argues the statement referenced in Paragraph 23 is non-hearsay because a member of management made the statement. Doc. #55, at 3 (citing Fed. R. Evid. 801(d)(2)). But, neither in his declaration nor in his response to the motion to strike did Plaintiff identify the person who made the statement, show the person was authorized to make the statement, or establish the statement was made within the scope of the speaker's employment. Fed. R. Evid. 801(d)(2). Thus, Plaintiff has not laid a foundation for an exception to the hearsay rule. Therefore, the Court strikes Paragraph 23.[12]

---

[11] Even if Paragraph 21 was not stricken, the Court's decision on Defendant's summary judgment motion would remain unchanged. Among other reasons, Plaintiff being the next person to be promoted when a promotional list expired at some unknown time in the past is not relevant to his failure to promote claim arising from the 2012 Captain's Test or his constructive discharge claim.

[12] Even if Paragraph 23 was not stricken, the Court's decision on Defendant's summary

In **Paragraph 25**, Plaintiff states he believes he was not promoted to captain at least five times because of his race. Doc. #49-17, at ¶ 25. In **Paragraph 35**, Plaintiff sets forth his belief that he was "consistently under-scored in the Captain[']s Promotional Process on the oral response portions…." *Id.* ¶ 35. In **Paragraph 38**, Plaintiff states he believed he "would never have been promoted to Captain" if he remained in employed with the KCFD. *Id.* ¶ 38. He does not identify any basis, provide details about, or otherwise explain the beliefs expressed in these paragraphs. Consequently, these statements are unsupported conclusions, and Plaintiff does not demonstrate how these conclusory statements, without more, would be admissible at trial. *See Camfield Tires, Inc*, 719 F.2d at 1367; *Murr*, 758 F.3d at 1024; *Gannon Int'l Ltd.*, 684 F.3d at 793. For this reason alone, the Court could strike these paragraphs. However, when viewing these statements with the entirety of Plaintiff's declaration and giving him the benefit of all inferences that may be reasonably drawn from the evidence, the Court finds these paragraphs have minimally satisfied the requirements. Therefore, the Court denies Defendant's motion to strike Paragraphs 25, 35, and 38.[13]

In **Paragraph 33**, Plaintiff states, in February 2014, he "asked around to determine how many candidates might be promoted off the list…[and it] became apparent to me that I would not be reached for promotion before the list expired in December." Doc. #49-17, ¶ 33. Defendant moves to strike this paragraph, arguing it is based on hearsay. Plaintiff contends this paragraph satisfies an exception to the

---

judgment motion would not be impacted. At a minimum, whether captains did not retire during a previous (undated) promotional list to allegedly prevent another person (not Plaintiff) from being promoted is irrelevant to Plaintiff's failure to promote claim arising from the 2012 Captain's Test and his constructive discharge claim.

[13] The Court notes that, in the context of a summary judgment motion, Plaintiff's "belief" that actions were discriminatory, without more, is not evidence of race discrimination. *See Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006); *see also Habib v. NationsBank*, 279 F.3d 563, 567 (8th Cir. 2001) (holding a "non-moving party must be able to 'substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy.'") (citation omitted). As the Eighth Circuit stated, a plaintiff's "unsupported self-serving allegation that [the] employer's decision" was because of the plaintiff's membership in a protected class "does not establish a genuine issue of material fact." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 888 (8th Cir. 2015) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 857 (8th Cir. 2012)).

hearsay rule because it evinces his then-existing mental condition or statement of mind demonstrating "intent, motive and[/]or plan concerning his constructive discharge claim."[14]  Doc. #55, at 2-3.

Certain statements are excluded from the rule against hearsay, including "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3).  "A declarant's out-of-court statement of intention is admissible to prove that the declarant subsequently acted in conformity with that intention, if the doing of that act is a disputed material fact." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1312 (8th Cir. 1993) (citation omitted).  Critically, this hearsay exception requires a <u>statement</u> be made "contemporaneous with the declarant's 'then existing' state of mind, emotion, sensation, or physical condition." *United States v. Naiden*, 424 F.3d 718, 722 (8th Cir. 2005).  While Plaintiff ostensibly relied on statements from unidentified others, Paragraph 33 does not set forth an out-of-court statement by Plaintiff of his "then-existing state of mind."  Thus, Rule 803(3) is not applicable.

Plaintiff also contends Paragraph 33 is based on personal knowledge, but fails to address that the paragraph is founded on information he obtained when he "asked around to determine how many candidates might be promoted off the list."  Information a declarant "heard" or "learned" does not equate to personal knowledge. *See Ward v. Int'l Paper Co.*, 509 F.3d 457, 462 (8th Cir. 2007) (citation omitted).  In addition, the paragraph is based on statements made to Plaintiff that are used for to prove the truth of the matters asserted.  As discussed *supra*, Plaintiff may not rely on hearsay to defeat a summary judgment motion, unless he also lays a foundation for an exception to the hearsay rule.  *See Jenkins*, 540 F.3d at 748; *Erickson*, 271 F.3d at 728; *Churchill Bus. Credit,* 49 F.3d at 1337 n.6.  Plaintiff does not lay a foundation for an exception to the hearsay rule.

---

[14] Plaintiff raised this argument for all paragraphs at issue.  However, that argument fails for all paragraphs for the same reason it fails for Paragraph 33.

The Court could strike Paragraph 33 for any of the foregoing reasons. However, when viewing this paragraph along with the remainder of the declaration and affording Plaintiff the benefit of all inferences reasonably drawn from the evidence, the Court finds this paragraph has minimally satisfied the requirements. Defendant's motion to strike Paragraph 33 is denied.

In **Paragraph 37**, Plaintiff states "there were several racially segregated fire stations and many racially segregated shifts" while he was employed with the KCFD. Doc. #49-17, ¶ 37. While this paragraph is conclusory, does not provide details (such as when and where), and does not specify the basis for Plaintiff's personal knowledge other than his employment with the KCFD, the Court construes all inferences in Plaintiff's favor, and finds this information is likely within his personal knowledge based on his years of employment with the KCFD. Therefore, Defendant's motion to strike Paragraph 37 is denied.[15]

In **Paragraph 43**, Plaintiff opines his expert witnesses, Kathleen Kline and Anne Wedow, "fairly assessed the oral responses" on his oral examinations, and "[a]ccording to the fair and non-discriminatory scores assessed by them..., [Plaintiff] would have been promoted on November 30, 2014 as demonstrated on the Excel [spreadsheet] attached as Exhibit 1." Doc. #49-17, ¶ 43. Plaintiff evaluate his experts' report, but fails to establish how he is qualified to assess and opine about experts' reports, fails to lay a foundation for the basis of his opinion, and fails to demonstrate how he is qualified to render such an opinion. Additionally, Plaintiff's statement that he "would have been promoted on November 30, 2014," is not based on personal knowledge. Instead, it is speculation, which is inadmissible and cannot be considered by the Court. *See infra*, section III(A). For these reasons, Defendant's motion to strike Paragraph 43 is granted.

In Paragraph 43, Plaintiff also refers to Exhibit 1, which is purportedly attached to his declaration. But there is no exhibit attached to his declaration. *See* Doc. #49-17. The Court cannot consider evidence that was not provided. Thus, Defendant's motion to strike Exhibit 1 to Plaintiff's declaration is granted.

---

[15] While the Court does not strike Paragraph 37, Plaintiff only brings a failure to promote claim and a constructive discharge claim. Neither claim is based on fire stations or shifts being purportedly segregated by race.

In **Paragraph 44**, Plaintiff states he "was discriminated against because of [his] race through the Captain's Promotional Process that began in 2012 and ended in 2014 when [Defendant] failed to promote [him]…." Doc. #49-17, ¶ 44. Defendant moves to strike this paragraph because it contains a legal argument. Like Paragraphs 25, 35, and 38, the Court could strike this paragraph for a number of reasons. But, when viewing this statement along with the entirety of Plaintiff's declaration and giving him the benefit of all inferences reasonably drawn from the evidence, the Court finds this paragraph meets the minimal requirements. Thus, the Court denies Defendant's motion to strike Paragraph 44.[16]

In **Paragraph 45**, Plaintiff avers that if Defendant had promoted thirty-two individuals through the 2012 Captain's Test promotional process that began in 2012, he would not have been able to bring his failure to promote claim. Doc. #49-17, ¶ 45. He further states his belief in February 2014 (that he would not be promoted) proved correct because he was not promoted during the 2012 Captain's Test promotional process. Defendant argues this paragraph presents legal arguments. The Court agrees this paragraph includes legal arguments, particularly regarding the accrual of Plaintiff's failure to promote claim. This paragraph also contains Plaintiff's speculation as to when he believed he could bring his failure to promote claim. While the Court could strike this paragraph, it declines to do so. However, the Court is cognizant of the legal arguments in this paragraph and those asserted in Paragraph 44, which are discussed further *infra*, section III(B)(1)(b).

In **Paragraph 47**, Plaintiff states, "I believe that even if I reached the top of the promotional list, the KCFD would have failed to promote me yet again." Doc. #49-17, ¶ 47. In addition to this statement being conclusory and unsupported, it is nothing more than speculation by Plaintiff, which cannot be considered by the Court. *See infra*, section III(A). Therefore, Defendant's motion to strike Paragraph 47 is granted.

---

[16] As stated *supra*, Plaintiff's belief that he was the victim of discrimination, which is what this paragraph expresses, without more, is not evidence of race discrimination. *See Canady*, 440 F.3d at 1034.

### III.    MOTION FOR SUMMARY JUDGMENT
#### A.    Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

The Court notes some of the parties' attempts to establish or controvert a fact were unsuccessful. For example, the cited record did not support or controvert the fact, nothing was cited in support of or in contravention of a fact (or portion of a fact), legal arguments were included in response to a fact, inadmissible evidence was used to support or controvert a fact, or the cited record was stricken. The facts (or portions of facts) not properly supported were not considered by the Court. Fed. R. Civ. P. 56(c), (e); L.R. 56.1(a), (d). Likewise, the facts the opposing party failed to properly controvert were deemed admitted by the Court. Fed. R. Civ. P. 56(c), (e); L.R. 56.1(b), (d).

#### B.    Discussion
#### (1)    Timeliness of Claims
##### (a)    *Defendant's Potential Waiver of Affirmative Defense*

Defendant moves for summary judgment on Plaintiff's failure to promote claims because they are untimely. The Court must first address whether Defendant waived the

statute of limitations defense because Defendant did not plead statute of limitations as an affirmative defense and never sought leave to amend its answer.  Doc. #6.  Yet, Defendant now moves for summary judgment on that basis.

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including…statute of limitations."  Fed. R. Civ. P. 8(c)(1).  Generally, if the affirmative defense of the statute of limitations is not raised in a responsive pleading, the defense is waived.  *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008) (citations omitted); *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (citations omitted) (stating a defendant "must plead and prove" the affirmative defense of statute of limitations).  Nevertheless, in certain instances, the Eighth Circuit has affirmed district courts' decisions allowing a party to raise an affirmative defense for the first time in a motion.  *See First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007); *Stoebner v. Parry, Murray, Ward & Moxley*, 91 F.3d 1091, 1093-94 (8th Cir. 1996).

When a plaintiff had notice of the defense and the plaintiff's ability to respond to the motion was not prejudiced, the Eighth Circuit has determined an affirmative defense, although not included in the defendant's answer, was not waived.  *See First Union Nat'l Bank*, 477 F.3d at 622 n.5 (finding "where the circumstances merit it, we have accepted and favorably cited affirmative defenses first raised at various stages of litigation."); *Stoebner*, 91 F.3d at 1093-94 (holding an affirmative defense was not waived because the plaintiff failed to show he lacked notice of the defense or that defendant's delay in asserting the defense prejudiced the plaintiff's ability to respond); *see also Sanders v. Dep't of the Army*, 981 F.2d 990, 991 (8th Cir. 1992) (citation omitted) (stating "[i]t was not necessary for the district court to require the meaningless formality of an amended answer because the [defendant]'s motion to dismiss, which expressly raised the limitations issue, provided [the plaintiff] with sufficient notice.").[17]

---

[17] This Court and other district courts in the Eighth Circuit have determined the belated assertion of an affirmative defense does not necessarily constitute waiver of that affirmative defense.  *See Union Bank v. Murphy*, No. 4:10-CV-714-DGK, 2012 WL 4404372, at *5-6 (W.D. Mo. Sept. 24, 2012) (finding the plaintiff was not unfairly surprised or prejudiced by the defendant's belated assertion of an affirmative defense); *Hogan Logistics, Inc. v. Davis Transfer Co.*, No. 4:15-CV-1541-CAS, 2018 WL 341733,

When responding to Defendant's arguments about the untimeliness of his claims, Plaintiff does not raise an issue with Defendant's failure to plead statute of limitations as an affirmative defense. *See* Doc. #49, at 23-26. Consequently, he does not argue he was not provided sufficient notice of the defense or his ability to respond to Defendant's statute of limitations argument was prejudiced by Defendant's delay in asserting the defense. Although Defendant failed to plead its affirmative defense of statute of limitations, Plaintiff has not shown he did not have sufficient notice of the defense or his ability to respond to the belatedly raised defense was prejudiced. Accordingly, the Court finds Defendant has not waived its statute of limitations affirmative defense.

### *(b)*     *Accrual of Plaintiff's Claims*

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983, which "provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 384 (2012) (quoting 42 U.S.C. § 1983). Although section 1983 provides a federal cause of action, it "looks to the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (8th Cir. 2007). "This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Id.* (citations omitted).

The parties agree the applicable statute of limitations is five years. Doc. #36, at 11; Doc. #49, at 24; Mo. Rev. Stat. § 516.120(4). They also agree the statute of limitations for a constructive discharge claim begins to run when the employee leaves his employment. Doc. #36, at 12 n.4; Doc. #49, at 26. Although Defendant contends Plaintiff does not have a cognizable discharge claim, it concedes his constructive discharge claim was timely brought. Also, Plaintiff concedes any failure to promote claims related to Captain's Tests before 2012 are time-barred. Doc. #49, at 26.

---

at *5-6 (E.D. Mo. Jan. 9, 2018) (finding there was no unfair surprise or prejudice to the plaintiff, even though the defendant did not allege an affirmative defense until filing a summary judgment motion, because the motion was filed more than four months before trial and discovery had been conducted on the issue); *LaFleche v. Clark Prods., Inc.*, No. 05-2549-MJD/AJB, 2007 WL 2023564, at *11 (D. Minn. July 9, 2007) (finding there was no evidence of unfair surprise or prejudice by the belated assertion of the affirmative defense of waiver).

However, the parties disagree as to when Plaintiff's failure to promote claim related to the 2012 Captain's Test accrued, and thus, whether the claim is time-barred.

(i)    <u>Summary of the Parties' Arguments</u>

Defendant argues Plaintiff's failure to promote claim arose in November 2012, when he received his test scores, or alternatively, in December 2012, when the promotional list was published. In support, Defendant generally relies on Plaintiff's Complaint and his interrogatory answers. Doc. #36, at 6, 8, 11-12. In the Complaint, Plaintiff alleges "[s]ome Caucasian candidates were unfairly over-scored through the Captain's Promotional Process that began in 2012," and Plaintiff was "significantly underscored" on the oral examinations. Doc. #1, ¶¶ 17, 20. If he "had not been underscored because of [his] race, [Plaintiff] would have been fairly ranked in the top 17 candidates and thus promoted through the Captain's Promotional Process that began in 2012." *Id.* ¶ 21. In his interrogatory answers, Plaintiff identified the "discriminatory conduct" as "the scoring of the promotional exams to Captain," and stated "the assessors who scored [his] oral tests" as the individuals who discriminated against him. Doc. #36-5, at 1. When asked to identify "any and all other instances of discrimination," Plaintiff stated he took the 1999 Captain's Test and when that promotional list expired, "I was the next candidate for promotion." *Id.* at 2.

Plaintiff argues his failure to promote claim was not "complete and present," and thus, did not arise until the 2012 Captain Test's promotional list expired in December 2014 and he had not been promoted.[18] Plaintiff alleges "Defendant has a pattern and practice of not promoting African Americans," "Defendant failed to promote him to Captain," and his "race and racial bias played a part in Defendant's failure to promote him and in the underscoring of the oral components of the Captain's Promotional Process, which began in 2012 and continued through 2014." Doc. #1, ¶¶ 20, 29, 31. In his declaration, Plaintiff states the discrimination related to the promotional process began in 2012 and ended in 2014. Doc. #49-17, ¶ 44. He claims if all applicants ranked higher than him had been promoted, he would have been promoted before the

---

[18] Plaintiff does not address, and the Court does not comprehend, how he could have a viable claim for failure to promote after he left his employment on April 1, 2014.

promotional list expired in December 2014.  *Id.* ¶ 45.  Thus, he did not know he had a failure to promote claim until the list expired and he had not been promoted.  *Id.*[19]

(ii)    <u>Date of Accrual</u>

In this matter, the statute of limitations begins to run when Plaintiff's cause of action accrues.  *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1327-28 (8th Cir. 1995) (citation omitted).  For a section 1983 claim, "the accrual date…is a question of federal law that is *not* resolved by reference to state law."  *Wallace*, 549 U.S. at 388. "Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles."  *Id.* (citations omitted); *see also Montin v. Estate of Johnson*, 636 F.3d 409, 413 (8th Cir. 2011) (citation omitted).  Under common-law tort principles, a claim accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'"  *Id.* (citations omitted); *see also Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1080-81 (8th Cir. 2018) (quoting *Wallace*, 549 U.S. at 388).

> Under the traditional rule of accrual...the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.  The cause of action accrues even though the full extent of the injury is not then known or predictable.  Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

*Wallace*, 549 U.S. at 391 (internal citations and quotations omitted).

(iii)    <u>Discrete Discriminatory Acts and Continuing Discriminatory Acts</u>

The parties do not specifically discuss whether Plaintiff's failure to promote claim is a discrete discriminatory act or a continuing discriminatory act.  This distinction is important because when an unlawful employment action "occurs" depends on whether it

---

[19] Plaintiff also contends the fire chief and "KCFD management" discriminated against him.  Doc. #49, at 7.  However, the cited record does not identify anyone who discriminated against him.  *See* Doc. #49-17, ¶ 44; Doc. #49-19, at 344.  Furthermore, other than alleging he was not promoted, the cited record does not show how Plaintiff was the victim of discrimination and when he was the victim of discrimination.  *Id.* Accordingly, the Court looks to Plaintiff's Complaint to identify his claim(s).

is a discrete discriminatory act or a continuing discriminatory act. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-21 (2002); *Ellis v. Houston*, 742 F.3d 307, 319-22 (8th Cir. 2014) (discussing discrete acts and continuing violations in the context of section 1983).[20] Each discrete act "occurs" on the day the act "happened." *Morgan*, 536 U.S. at 110.

"Discrete acts such as termination, failure to promote, denial of transfer, and refusal are easy to identify." *Id.* at 114. Each discrete act is considered a "separate actionable unlawful employment practice," and therefore, the statute of limitations begins to run on the day the discrete act occurs – that is, on the day the act "happened." *Id.* at 110, 113-14; *see also Wedow v. City of Kan. City*, 442 F.3d 661, 670 (8th Cir. 2006) (stating each discrete act "starts a new clock."). A discrete act is "not actionable if time barred, even when [it is] related to acts" that are timely filed. *Id.* Moreover, "[d]iscrete acts that fall within the statutory time period do not make timely [those discrete] acts that fall outside the time period." *Id.* at 112 (citation omitted).

Unlike a discrete act, a continuing discriminatory act is "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (citation omitted). Because a continuing act "occurs over a series of days or perhaps years…," it "cannot be said to occur on any particular day." *Id.* at 115 (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). These claims "are based on the cumulative effect of individual acts." *Id.* at 115; *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919-20 (8th Cir. 2018). To establish a continuing violation, a plaintiff "must show that the acts of which he or she complains were not actionable as discrete violations of the applicable law." *Stolzenburg v. Ford Motor Co.*, 143 F.3d 402, 405 (8th Cir. 1998) (citation omitted). Significantly, "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v.*

---

[20] The Eighth Circuit applies similar standards to intentional employment discrimination claims under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. §1983. *Madison v. IBP, Inc.*, 330 F.3d 1051, 1060-61 (8th Cir. 2003) (citations omitted) (noting the Supreme Court in *Morgan* "did not draw on any peculiarities in Title VII or its statutory language" when discussing discrete acts and continuing violations); *see also Richmond v. Bd. of Regents of Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir. 1992) (citations omitted). Accordingly, the Court cites to decisions that discuss any of these statutes.

*Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citation omitted). Due to the continuing nature of the claim, "the employer may be liable for all acts that are part of this single claim." *Moses*, 894 F.3d at 920 (quoting *Morgan*, 536 U.S. at 118).

Defendant's asks that the Court should consider the decision not to promote Plaintiff as a discrete act that accrued in late 2012 (when the scores were distributed or when the promotional list was posted). Plaintiff's argument suggests a continuing discriminatory act that did not accrue until December 2014 (when the promotional list expired). Plaintiff cites to two Second Circuit cases to support his argument.

In both cases cited by Plaintiff, the Second Circuit determined a failure to hire or promote claim did not arise until an eligibility list expired because the plaintiff would not know he was not going to be hired or promoted until the eligibility list expired. *Harris v. City of N.Y.*, 186 F.3d 243, 248-49 (2d Cir. 1999); *Guardians Ass'n of N.Y. Police Dep't, Inc.*, 633 F.2d 232, 249, 251 (2d Cir. 1980) (holding the defendant's refusal to hire based upon a discriminatory examination were "at the very least…the culmination of a continuously maintained illegal employment policy," "were not discrete acts," and "were carried out pursuant to a conceded and consistent policy."). Plaintiff does not cite any other decisions, and the Court's research did not reveal other circuit courts that have followed the Second Circuit.

Conversely, at least three circuit courts have found the failure to promote from a promotional or eligibility roster is a discrete act. Long before *Morgan* provided guidance on discrete and continuing acts, the Third Circuit determined the promulgation of an eligibility roster was the discriminatory act, and the use of the eligibly roster was not continuing discrimination. *Bronze Shields, Inc. v. N.J. Dep't of Corrs.*, 667 F.2d 1074, 1083-84 (3d Cir. 1981). Like this matter, *Bronze Shields* involved an eligibility roster compiled from written examination scores, service years, and service ratings. *Id.* at 1077. The plaintiffs alleged the examination was discriminatory, and because the roster was in effect for at least two years, the discrimination was continuing. *Id.* at 1081. The Third Circuit rejected the argument, finding the decision not to promote was "a delayed, but inevitable consequence of the allegedly discriminatory practice – here a specific, identifiable act, the promulgation of the hiring roster." *Id.* at 1084.

Similarly, the Sixth Circuit determined a "promotion or hiring from an allegedly tainted promotion roster is not a 'continuing act' but is merely the effect of previous discrimination." *Cox v. City of Memphis*, 230 F.3d 199, 204 (6th Cir. 2000). In *Cox*, the promotional list was effective for two years, and the plaintiffs were not promoted. *Id.* at 201. The plaintiffs argued their employer committed a separate discriminatory act each time it promoted someone other than plaintiffs from the "allegedly flawed eligibility list." *Id.* at 202. The Sixth Circuit rejected the argument, stating "[t]o allow employees to challenge an eligibility roster during the entire time it is used would be to create substantial uncertainty for employers who have to make important staffing decisions based upon the list." *Id.* at 204-05. Further, a rule that permits "employees to 'sit on their rights' in the hopes" of being promoted would cause "an employer's staffing and hiring decisions [to] essentially remain tentative during the entire period in which a roster was utilized, and for a substantial period thereafter if litigation ensues." *Id.* This, the Sixth Circuit noted, was an "unreasonable demand" on employers "when potential plaintiffs would know of alleged discrimination in ranking many months or years…." *Id.*

The Seventh Circuit considered a similar case where the plaintiffs alleged their employer did not promote them because of their race. *Adams v. City of Indianapolis*, 742 F.3d 720, 724 (7th Cir. 2014). In *Adams*, the plaintiffs, who claimed the testing process was racially biased, attempted to invoke the continuing violation doctrine, but the Seventh Circuit found the Supreme Court's decision in *Morgan* foreclosed that argument. *Id.* at 729-30 (citing *Morgan*, 536 U.S. at 114). The Seventh Circuit concluded the plaintiffs' failure to promote claims "fall squarely within the Supreme Court's list of 'discrete acts.'" *Id.* at 730 (citations omitted). Thus, the statute of limitations began to run for each failure to promote claim when the plaintiff was denied the promotion. *Id.*

While the Eighth Circuit has not addressed the exact circumstances before this Court, it has rendered decisions shedding light on whether it may consider Plaintiff's failure to promote claim to be a discrete or continuing discriminatory act. First, the Eighth Circuit has reiterated the failure to promote is a discrete employment action, and the Eighth Circuit has repeatedly declined to extend the continuing violation doctrine to include failure to promote. *See Humphrey*, 891 F.3d at 1083 (reiterating it "has never

applied the continuing violation doctrine to a discrete act, such as failure to promote, and we decline to do so now.") (quoting *High v. Univ. of Minn.*, 236 F.3d 909, 909 (8th Cir. 2000)); *see also Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823, 825 (8th Cir. 2008) (holding "the continuing violation doctrine does not encompass discrete discriminatory acts, such as…failure to promote…which [is] individually actionable.") (citation omitted); *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 988 (8th Cir. 2003) (finding the failure to promote is a separate violation) (citation omitted); *Stolzenburg*, 143 F.3d at 405 (stating the denials of promotion "were discrete employment actions") (citation omitted).

Second, the Eighth Circuit has held a claim accrues on "the date on which the adverse employment action is communicated to the plaintiff." *Dring*, 58 F.3d at 1328. In *Dring*, the Eighth Circuit concluded the statute of limitation for the plaintiff's termination claim began to run on July 18, 1990, when he was informed of the adverse employment action and not when he was laid off on April 7, 1991. *Id.*

Similarly, the Eighth Circuit determined a claim accrued when the plaintiffs "were notified of the allegedly discriminatory decision" to install pumps on their property. *Humphrey*, 891 F.3d at 1082. The Eighth Circuit noted the later "installation of the pumps and the [plaintiffs'] continuing responsibility for the additional expenses they entail…are **delayed, but inevitable, consequences** of that [allegedly discriminatory] decision." *Id.* (emphasis added). The plaintiffs argued their claim did not accrue when they were informed of the decision to install pumps because they lacked standing to bring a claim at that time. *Id.* The Eighth Circuit disagreed, stating when the plaintiffs learned of the allegedly discriminatory decision, "they could have sought declaratory or injunctive relief, and later added demands for compensatory damages once they incurred actual financial harm." *Id.* (citation omitted). The Eighth Circuit also concluded the plaintiffs had "not identified any continuing unconstitutional policy or restraint." *Id.* at 1083. Instead, the Eighth Circuit determined the plaintiffs only "complain[ed] of the delayed, but inevitable, consequences of the allegedly discriminatory decision" to install certain pumps on their property. *Id.*

In rendering its decisions in *Dring* and *Humphrey*, the Eighth Circuit relied on the Supreme Court's decision in *Delaware State College v. Ricks,* 449 U.S. 250 (1980),

which is also instructive. Ricks, a college professor, was informed that the university was denying him tenure, but his employment did not conclude until more than a year later. *Id.* at 252-54, 257. Ricks claimed the university's decision to deny him tenure was discriminatory. *Id.* at 252. The university claimed Ricks's claim was untimely because the statute of limitations began to run when he was informed of the university's decision to deny him tenure. *Id.* at 254-55. The Supreme Court concluded the statute of limitations on Ricks's denial of tenure claim began to run when he was informed his tenure was denied, not when his employment concluded a year later. *Id.* at 256-58. The Supreme Court found Ricks's termination was not a "continuing violation"; rather, it was "a delayed, but inevitable, consequence of the denial of tenure." *Id.* at 257-58.

Regarding the 2012 Captain's Test promotional process, Plaintiff, when answering interrogatories, identified only one aspect that was discriminatory – to wit, the alleged underscoring of the oral examinations. The alleged underscoring occurred in October 2012, Plaintiff was informed of his scores in November 2012, and the promotional list, which listed the candidates in order of their scores, obtained was published in December 2012. Thus, Plaintiff knew of the alleged discriminatory act by no later than December 2012, and at that time, his claim accrued. *See Delaware State Coll.*, 449 U.S. at 258; *Humphrey*, 891 F.3d at 1082; *Dring*, 58 F.3d at 1328. Also, by no later than December 2012, Plaintiff was aware he had been damaged by the alleged discriminatory act because, as a result of the alleged underscoring, he was ranked thirty-second on the promotional list. While he may not have known the extent of his injuries, the claim still begins to accrue when the alleged wrongful act results in damages. *Wallace*, 549 U.S. at 391; *Humphrey*, 891 F.3d at 1081.

Furthermore, Plaintiff has neither shown his failure to promote claim is based on the cumulative effect of individual acts nor established the alleged discriminatory acts of which he complains were not actionable as discrete violations. *Morgan*, 536 U.S. at 115; *Stolzenberg*, 143 F.3d at 405. Instead, the record demonstrates that, to the extent the scoring of the oral examinations was a discriminatory act, Defendant's failure to promote Plaintiff based on the promotional list was a delayed but inevitable consequence of the alleged underscoring of the oral examinations. *See Humphrey*, 891 F.3d at 1082; *Cox*, 230 F.3d at 204; *Bronze Shields*, 667 F.3d at 1084. The statute of

limitations began to run by no later than December 2012, but Plaintiff did not file his lawsuit until more than five years later, after the statute of limitations ran.

### (c)    Tolling of the Statute of Limitations

The statute of limitations may be subject to the equitable doctrines of tolling or estoppel.  *Morgan*, 536 U.S. at 113 (citations omitted).  While federal law governs when a section 1983 claim accrues, the tolling of a statute of limitations is determined by state law.  *Wallace*, 549 U.S. at 394 (citations omitted); *Montin*, 636 F.3d at 413 (citation omitted).  "Missouri law provides that a statute of limitations may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature and the courts are not empowered to extend those exceptions."  *Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 184 (Mo. banc 2014) (citations and internal quotations omitted); *see also* Mo. Rev. Stat. § 516.170 (stating "if any person entitled to bring an action in sections 516.100 to 516.370 specified, at the time the cause of action accrued be either within the age of twenty-one years, or mentally incapacitated, such person shall be at liberty to bring such actions within the respective times....limited after such disability is removed.").  Plaintiff has not set forth any argument that the statute of limitations should be suspended or tolled.  Because he failed to timely file his section 1983 failure to promote claim arising from the 2012 Captain's Test promotional process and he provides no basis for tolling or suspending the statute of limitations, the Court grants Defendant's motion for summary judgment on that claim.

### (2)    Plaintiff's Claims[21]

Plaintiff alleges Defendant violated his Fourteenth Amendment rights when it failed to promote him to captain and "as a result of not being promoted," he was constructively discharged.  Doc. #1, ¶¶ 24-25, 29-31.  He contends Defendant's "pattern

---

[21] Although the Court granted Defendant's motion for summary judgment on Plaintiff's failure to promote claim due to it being untimely, the Court will also address the substance of that claim.

and practice of not promoting African Americans to Captain…violates [his] Fourteenth Amendment… right[s] to equal protection and due process." *Id.* ¶¶ 29-30.[22]

Under section 1983, a plaintiff must demonstrate the municipality, "through its *deliberate* conduct," "was the 'moving force behind the injury'" that he allegedly suffered for the municipality to be liable. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Section 1983 liability will attach to a municipality for a constitutional violation "only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016) (citation omitted); *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013) (citations omitted).

---

[22] In opposing Defendant's summary judgment motion, Plaintiff does not indicate how his rights were violated. *See* Doc. #49. The Court presumes Plaintiff's allegation of intentional race discrimination forms the basis of his equal protection argument, but his due process claim remains unclear.

"Substantive due process may be violated if state action either shocks the conscience or offends judicial notions of fairness or human dignity." *Klein v. McGowan*, 198 F.3d 705, 710 (8th Cir. 1999) (citation omitted). For a section 1983 claim based on substantive due process violations, a plaintiff "must demonstrate that the government action complained of is 'truly irrational,' that is 'something more than…arbitrary, capricious, or in violation of state law.'" *Id.* (citation omitted).

For a procedural due process claim, there must be a "deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 (1972). Without a protected liberty or property interest, a procedural due process claim fails. *Batra v. Bd. of Regents of Univ. of Minn.*, 79 F.3d 717, 720 (8th Cir. 1996) (citation omitted). Perhaps most relevant to this matter, "a government employee must have a 'legitimate claim of entitlement' to continued employment, as opposed to a mere subjective expectancy" for a property interest to arise. *Id.* (quoting *Bd. of Regents*, 408 U.S. at 574 n.13).

When liberally construing Plaintiff's allegations, Plaintiff seems to allege his substantive due process rights were violated. But Plaintiff does not allege he was deprived of liberty or property, and he does not allege he had a legitimate claim for entitled to continued employment. Thus, the Court discerns no procedural due process claim.

### (a) Failure to Promote

#### (i) Official Policy

An official municipal policy includes "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (citations omitted); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). To constitute an official municipal policy, "the decisionmaker in question" must possess "final authority to establish municipal policy with respect to the action ordered." *Bolderson*, 840 F.3d at 985 (citation omitted). Whether a person has final policymaking authority is a "question of law," and the trial judge "must identify those officials…who speak with final policymaking authority…." *Atkinson*, 709 F.3d at 1214 (citations omitted). To determine where final policymaking authority rests, courts consult "state and local positive law" and "state and local custom or usage having the force of law." *Id.* at 1215 (citations and internal quotations omitted).

In interrogatories, Plaintiff was asked to identify the official municipal policy that allegedly violated his constitutional rights. Doc. #36-5, at 3. He identified "[t]he grading of the captain's test," and stated the "Fire Chief or who[m]ever selected the assessors" were the decision makers who established the official municipal policy. *Id.* But Plaintiff fails to present evidence of an official policy regarding the grading of captain's tests or an official policy regarding the underscoring of African-American applicants for captain.

When responding to Defendant's summary judgment, Plaintiff does not identify any official municipal policy. Doc. #49, at 27-30. Instead, he contends Defendant's anti-discrimination ordinances were ignored. He also argues the KCFD Fire Chief is a policymaker because, among other things, the Fire Chief "decides the Promotional Process…including promotions to Captain." Doc. #49, at 27-30. He maintains the Fire Chief decided whether the Captain's Test assessors were drawn from the KCFD or outside of the KCFD. Plaintiff specifically points to the Fire Chief choosing to use an outside assessment center for the Captain's Test in 2014.

Even if the Court were to find the Fire Chief was a policymaker, the Fire Chief had final authority to establish municipal policy, and/or the Fire Chief established an official policy, Plaintiff does not demonstrate the Fire Chief's choice to use in-house

assessors during the 2012 Captain's Test is an official municipal policy, or the grading[23] of the oral examinations during the 2012 Captain's Test was an official municipal policy. Furthermore, he does not show the choice to use in-house assessors or the grading of the oral examinations, again assuming either could be considered an official policy, directly caused and was the moving force behind the injury Plaintiff purportedly suffered. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's failure to promote claim based on official municipal policy.

### (ii)    Unofficial Custom or Practice

 "To trigger municipal liability based on unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law." *Bolderson*, 840 F.3d at 986 (citation omitted); *see also Monell*, 436 U.S. at 690. "The custom must be demonstrated by a continuing, widespread, and persistent pattern of unconstitutional misconduct." *Id.* (citation omitted). "An unconstitutional custom…cannot arise from a single act." *Id.*

In his interrogatory answers, Plaintiff stated the "[i]nternal assessment for captain's test" was the unofficial custom that violated his constitutional rights. Doc. #36-5, at 3. In response to Defendant's summary judgment motion, Plaintiff contends Defendant has an unofficial custom of discriminating against African-Americans in promotions to captain. Doc. #49, at 32. While this unofficial custom was not identified in interrogatory answers, Plaintiff's Complaint encompasses such a theory. Doc. #1, ¶¶ 9, 22, 29.

Not included in his interrogatory answers or his Complaint, Plaintiff, when responding to the summary judgment motion, stated there was a custom and practice of widespread racial discrimination in the KCFD, a history of racial prejudice in the KCFD, and "tacit authorization [by] management] to allow the unconstitutional conduct." Doc. #49, at 31-33. Plaintiff points to under-representation of African-American employees in

---

[23] There is no evidence of the Fire Chief or policymaker deciding or directing that Plaintiff's or any other applicant's oral examinations be underscored. Instead, the results from the 2012 Captain's Test promotional process reveal there was no such policy in place. The top ranked applicant and two other applicants ranked in the top seventeen identify as African-American. Doc. #36-6, at 7.

the KCFD; racial segregation on shifts and in stations; his unsuccessful attempt to join an all-Caucasian study group; racial slurs heard by others (not Plaintiff); and a lawsuit filed by another African-American employee of the KCFD who unsuccessfully applied to be a captain. *Id.* at 31-33. Plaintiff's attempt to expand his unofficial custom claim is improper. *See Woods v. Wills,* 400 F. Supp. 2d 1145, 1186 (E.D. Mo. 2005) (finding a party could not assert new theory of case when responding to a summary judgment motion or expand the basis of the party's claim to attempt to create a material issue of fact). Thus, the Court finds this new unofficial custom is not properly before it.

Even if the Court considers all three unofficial customs and/or practices that Plaintiff identified, he does not demonstrate an unofficial custom or practice that is "pervasive," "has the force of law," and/or involves "continuing, widespread, and persistent pattern of unconstitutional misconduct." *Bolderson*, 840 F.3d at 986 (citation omitted). Also, regarding his allegation that the scoring of his oral examinations was the unofficial custom, the scoring cannot be an unofficial custom because it arises out of one single event. *Id.* Finally, Plaintiff has cited admissible evidence demonstrating Defendant took actions against him with deliberate indifference, knowing the obvious consequences of those actions. *Atkinson*, 709 F.3d at 1216. For these reasons, the Court grants Defendant's motion for summary judgment on Plaintiff's failure to promote claim based on unofficial custom or practice.

### (iii)     Failure to Train

A municipality's "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. As the Supreme Court noted, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citation omitted). To establish a section 1983 claim for failure to train, a plaintiff must demonstrate the municipality's failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (citation and internal quotation omitted); *see also Ambrose v. Young*, 474 F.3d 1070, 1079-80 (8th Cir. 2007) (holding a plaintiff "must show the need for more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that [the defendant] can reasonably be said to have been deliberately indifferent to the need.") (citation and internal quotations omitted).

Plaintiff's Complaint does not specify the basis of his failure to train claim. *See* Doc. #1. But, in interrogatory answers, Plaintiff identified the "[a]ssessors not [being] sufficiently screened or trained regarding racial bias" as the "acts that constitute the deliberately indifferent failure to train or supervise." Doc. #36-5, at 3. When responding to Defendant's motion for summary judgment, Plaintiff refers to failure to train in passing and seems to conflate his failure to train arguments with his official policy arguments. Doc. #49, at 21, 26-33. Assuming Plaintiff is maintaining a failure to train claim, he fails to identify a genuine issue of material fact preventing entry of summary judgment in Defendant's favor on this claim.

First, contrary to Plaintiff's representation, the record reflects Defendant's employees, including KCFD employees, were trained every two to three years on discrimination, harassment, and implicit bias. Doc. #49-19, at 292-98. Second, Plaintiff does not demonstrate (or even argue) Defendant's purported decision not to train the assessors rose to the level of an official policy.[24] Third, Plaintiff does not point to any evidence demonstrating Defendant's alleged failure to train amounts to "deliberate indifference" to his rights. Fourth, Plaintiff does not show the need for more training is "so obvious" and/or the inadequacy of the training was so likely to result in constitutional violations. In summary, Plaintiff has not established a section 1983 claim based on failure to train, and he has not demonstrated a genuine issue of material fact exists with regard to said claim. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's section 1983 claim based on failure to train.

---

[24] The Court notes that although Plaintiff's response to Defendant's summary judgment motion does not discuss the training the assessors received, he included an "assessor manual" for the 2012 captain promotional process as an exhibit to his response. Doc. #49-7. This forty-three-page manual, which "was designed for use in conjunction with a formal training program for assessors," outlines the assessors' training, provides the agenda for roughly forty hours of training, provides standards and guidelines to be used when evaluating candidates' performance, gives rating forms, and discusses the ethics of performance-based assessment operations. *Id.*; *see also* Doc. #38-2, at 17-18.

### (b)     Constructive Discharge

"Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." *Wright v. Rolette Cty.*, 417 F.3d 879, 886 (8th Cir. 2005) (citation omitted).  To prove constructive discharge, Plaintiff "must establish [Defendant] deliberately made or allowed [his] working conditions 'to become so intolerable that [he] had *no other choice* but to quit.'"[25] *Jones v. Fitzgerald*, 285 F.3d 705, 715-16 (8th Cir. 2002) (citation omitted).  An employee who leaves his employment "without giving the employer a reasonable chance to resolve a problem has not been constructive discharged." *Davison v. City of Lone Jack*, 121 F. App'x 671, 672 (8th Cir. 2005) (citing *Phillips v. Taco Bell Corp.,* 156 F.3d 884, 890 (8th Cir. 1998)); *see also Anda v. Wickes Furniture Co.*, 517 F.3d 526, 535 (8th Cir. 2008) (citation omitted); *Jones*, 285 F.3d at 716 (citation omitted) (stating "[a] plaintiff must take affirmative steps short of resigning that a reasonable employee would take to make her conditions of employment more tolerable.").

Defendant moves for summary judgment on Plaintiff's constructive discharge claim arguing Plaintiff's working conditions were not objectively intolerable, there is no temporal link between the scores Plaintiff received on his oral examinations and his resignation, and Plaintiff did not give Defendant a reasonable chance to resolve problems with his employment.  In his interrogatory answers, Plaintiff stated he left his employment with Defendant because he "felt that the opportunity for promotion was gone, so I took the available pension and pursued other life options."  Doc. #36-5, at 1.

When opposing Defendant's summary judgment motion, Plaintiff, similar to his unofficial custom claim, expands the basis of his constructive discharge.  That is, Plaintiff contends he unsuccessfully sought a promotion for more than a decade, he was aware that shifts and stations were racially segregated, and he was excluded from an all-Caucasian study group because he was told that he "was smart enough to study on his own."  Doc. #49, at 34.  He argues he gave the KCFD "years" to correct the problem

---

[25] If a plaintiff cannot show his employer "consciously intended" for the plaintiff to quit, the plaintiff "can still prevail on a constructive discharge claim if 'the employer…could have reasonably foreseen that the employee would [quit] as a result of its actions." *Wright*, 417 F.3d at 886 (citation omitted).

of his non-promotion, and the KCFD was aware he had unsuccessfully attempted to be promoted.  *Id.* at 36.

Nevertheless, there is nothing in the record demonstrating (1) Defendant deliberately allowed or made Plaintiff's working conditions so intolerable,[26] (2) Plaintiff's working conditions were so intolerable he had no other reasonable choice but to resign, and (3) Plaintiff gave Defendant a reasonable chance to resolve the intolerable working conditions.  Plaintiff does not address whether he had alternatives to resigning.  He could have requested a second review of his oral examination scores or complained about his scores, but Plaintiff admitted he never complained.  *Jones*, 285 F.3d at 716 (noting the plaintiff had alternatives to resignation including lodging a formal complaint against her supervisor).  While Plaintiff claims he gave Defendant "years to correct the problem of his non-promotion," he does not show that he reported this "problem" to Defendant.  Plaintiff claims members of management were aware of assessors bartering to promote Caucasian applicants over African-American applicants, but he cites nothing indicating this occurred in 2012.  Doc. #49, at 36-37; Doc. #52, at 16.  When considering the foregoing, Plaintiff has not demonstrated he was constructively discharged.

Moreover, Plaintiff admits he did not discuss his reasons for leaving the KCFD with Defendant, and he did not complain to Defendant that he was the victim of discrimination.  Doc. #36-5, at 1-2.  These admissions are fatal to his constructive discharge claim.  *See, e.g., Anda*, 517 F.3d at 535; *Davison*, 121 F. App'x at 672; *Williams v. City of Kan. City*, 223 F.3d 749, 754 (8th Cir. 2000) (finding the plaintiff did not give the city an opportunity to address her concerns, and therefore, the Court could not say resignation was the plaintiff's only plausible alternative); *Knowles v. Citicorp Mortg., Inc.*, 142 F.3d 1082, 1086 (8th Cir. 1998) (citations omitted).

In addition, Plaintiff does not explain why he left his employment in April 2014 when he received his oral examination scores in November 2012, and the promotional list was published in December 2012.  Plaintiff does not demonstrate how his working

---

[26] To the extent Plaintiff was frustrated and embarrassed about not being promoted, that is insufficient to establish constructive discharge.  *See West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995) (citations omitted).

conditions became "so intolerable" during that timeframe. In fact, Plaintiff points to nothing specific that occurred during that timeframe that rendered his working conditions so intolerable. Instead, the passage of more than a year between the alleged discriminatory act(s) and Plaintiff's decision to leave his employment does not support his contention that his working conditions were so intolerable he felt he had no choice but to quit.

For all the foregoing reasons, the Court grants Defendant's motion for summary judgment on Plaintiff's constructive discharge claim.

### (3)  Punitive Damages

Plaintiff concedes he is not entitled to punitive damages. Doc. #49, at 37. Pursuant to Plaintiff's concession and the Court's entry of summary judgment in Defendant's favor on all of Plaintiff's claims, Defendant's motion for summary judgment on Plaintiff's request for punitive damages is granted.

## IV.  MOTIONS TO STRIKE EXPERTS

Considering the Court granting Defendant's motion for summary judgment, the Court deems the parties' motions to exclude experts as moot.

## V.  CONCLUSION

For the foregoing reasons, the Court (1) grants in part and denies in part Defendant's Motion to Strike Plaintiff's Declaration and strikes Paragraphs 15, 17, 19, 21, 23, 24, 43, and 47, a portion of Paragraph 18, and Exhibit 1 to the declaration; (2) grants Defendant's Motion for Summary Judgment; and (3) finds as moot the parties' motions to strike experts.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
DATE: September 6, 2019                          ORTRIE D. SMITH, SENIOR JUDGE
                                                 UNITED STATES DISTRICT COURT